NOTE: This disposition is non-precedential.

# United States Court of Appeals for the Federal Circuit

---

**MIKE MEHAFFY,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2012-5069

---

Appeal from the United States Court of Federal Claims in Case No. 09-CV-860, Judge Christine O.C. Miller.

---

Decided: December 10, 2012

---

BRUCE B. TIDWELL, Friday, Eldredge & Clark, LLP, of Little Rock, Arkansas, for plaintiff-appellant.

MATTHEW LITTLETON, Attorney, Appellate Section, Environment & Natural Resources Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief was IGNACIA S. MORENO, Assistant Attorney General.

---

Before RADER, *Chief Judge*, LOURIE and WALLACH, *Circuit Judges*.

RADER, *Chief Judge*.

In this case, Appellant Mike Mehaffy seeks compensation from the government, claiming a taking of his real property in violation of the Fifth Amendment to the United States Constitution. Mr. Mehaffy's claim arises from a decision by the United States Army Corps of Engineers (the "Corps") denying Mr. Mehaffy's fill permit application under section 404 of the Clean Water Act, 33 U.S.C. § 1344. The United States Court of Federal Claims granted summary judgment for the government on the ground that Mr. Mehaffy had not met the requirements for a regulatory taking under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978) ("*Penn Central*"). This court affirms the decision of the trial court.

## I.

The land subject to this litigation is a seventy-three acre parcel bordering the Arkansas River in North Little Rock, Arkansas. In 1970, the property was owned by Nomikano, Inc. ("Nomikano"), an Arkansas corporation holding assets for the benefit of the Mehaffy family and whose business was conducted by Mr. Mehaffy's father, the Honorable Pat Mehaffy.

On March 2, 1970, the United States purchased a flowage easement ("the easement") from Nomikano that covered roughly forty-nine acres of the subject property. The easement was purchased as part of a congressionally authorized effort to construct locks and dams along the Arkansas River. It gave the government the right to, among other things, "permanently overflow, flood and submerge the land lying below elevation 249, [mean sea

level], and to occasionally overflow, flood, and submerge the land lying above elevation 249, m.s.l., in connection with the operation and maintenance of Lock and Dam No. 7, Arkansas River project." *Mehaffy v. United States*, 102 Fed. Cl. 755, 757 (2012).

However, the easement also contained a reservation of certain rights. According to the easement deed, Nomikano reserved for itself, its successors, and assigns,

> all such rights and privileges as may be used and enjoyed without interfering with [the government's purpose in obtaining the easement]. Included among those rights specifically reserved to the landowner, its successors and assigns, is the right to place fill in the area of said tract and to place structures on said fill above elevation 252 feet, m.s.l. Notwithstanding, the above exception does not permit the placing of structures for human habitation thereon.

*Id.* This reservation of rights was included in the easement deed at the request of Mr. Mehaffy's father.

After the government purchased the easement, Congress enacted the Clean Water Act of 1972, Pub. L. No. 95-217, 91 Stat. 15656 (as amended at 33 U.S.C. §§ 1251–1387 (2006)) (the "CWA"). Section 404 of the CWA, codified at 33 U.S.C. § 1344, "establishes a program for the regulation of fill activities involving waters of the United States. The basic premise of the program is that no discharge of dredged or fill material into waters of the United States is permitted if a practicable alternative exists that is less damaging to the environment." *Norman v. United States*, 429 F.3d 1081, 1086 n.1 (Fed. Cir. 2005) (internal quotations omitted). On October 10, 1980, the Corps notified Nomikano and its officers (including Mr. Mehaffy), that the property and the easement were

subject to the terms of the CWA. The letter specifically stated the easement, by itself, "is not sufficient to authorize work requiring authorization under [the CWA]," and thus a section 404 permit would be required should Nomikano desire to place fill material in any of the wetlands located on the property. *Mehaffy*, 102 Fed. Cl. at 758.

In 1987, Nomikano was dissolved, its assets liquidated, and the property sold to Mehaffy Construction Company Inc. ("MCC"). While Mr. Mehaffy was the main executive for MCC at that time, the sale was a "negotiated, arm's-length transaction for $75,000" which was then the fair market value of the land. *Id.* In May 2000, the property was sold a second time. Mr. Mehaffy had relinquished managerial control of MCC by that time, and MCC sold the property to him for $10.00.

In 2004, the Mehaffys began to develop the property. The Corps identified wetland-delineated areas on the subject property, and MCC cleared and leveled approximately nine to ten acres of the uplands portion of the subject property. The Mehaffys then used this cleared land as a storage yard for their construction business.

In September 2006, Mr. Mehaffy filed an application for a section 404 permit to fill approximately forty-eight acres of wetlands on the subject property. The application stated the purpose of the permit was to exercise the right granted in the 1970 easement. After several months of communication between the Corps and Mr. Mehaffy, a period of public comment, and input from several federal and state governmental agencies, the Corps denied Mr. Mehaffy's permit application. The Corps emphasized that Mr. Mehaffy had failed to demonstrate that his proposed placement of 230,000 cubic yards of fill within a designated floodway and wetland "did not have any practicable

alternatives which would have less adverse environmental impacts." *Id.* at 761.

The Corps informed Mr. Mehaffy of his agency appeal options, and he subsequently appealed the permit denial through the Corps' administrative appeals process. The Corps ultimately denied his appeal, and, as the trial court found, this denial represented the final Corps decision regarding Mr. Mehaffy's section 404 permit application. *Id.*

Mr. Mehaffy then filed suit in the United States Court of Federal Claims. He claimed the Corps' refusal to provide him with a permit to fill the property "in accordance with the reservation contained in the Easement Deed" constituted a compensable partial regulatory taking of Mehaffy's land. App. 32. Following a period of discovery and an unsuccessful motion to dismiss, the government moved for summary judgment based on the parties' Joint Stipulation of Facts.

The trial court granted the government's motion. It analyzed the facts using the *Penn Central* framework and concluded that Mr. Mehaffy could not show he had a reasonable investment-backed expectation to fill the property, nor that the government action was retroactive or targeted against him specifically. **[JA 14]** Mr. Mehaffy appealed, and this court has jurisdiction under 28 U.S.C. § 1295(a).

## II.

This court reviews the Court of Federal Claims' grant of summary judgment without deference. *Schooner Harbor Ventures, Inc. v. United States*, 569 F.3d 1359, 1362 (Fed. Cir. 2009). "Summary judgment is appropriate when, making all reasonable inferences in favor of the non-moving party, there exists no genuine issue of mate-

rial fact for trial." *Id.* (citing Ct. Fed. Cl. R. 56(c)(1); *Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1370–71 (Fed. Cir. 2004)).

According to the Fifth Amendment, private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. For years, courts have distinguished between government action that physically takes control or ownership of private property and statutory and regulatory regimes that impose limits on an owner's ability to use his property. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 323–24 (2002) (noting the rules for determining a physical taking are different than the rules for determining a regulatory taking). Here, Mr. Mehaffy claims the Corps' refusal to grant him a fill permit is a compensable partial regulatory taking of his land. App. 32.

There is no question that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). When determining whether a particular regulation has gone too far, this court considers "(1) the character of the government action, (2) the extent to which the regulation interferes with distinct, investment-backed expectations, and (3) the economic impact of the regulation." *Good v. United States*, 189 F.3d 1355, 1360 (Fed. Cir. 1999) (citing *Penn Central*, 438 U.S. at 124–25). While evaluation of the *Penn Central* factors "is essentially an 'ad hoc, factual' inquiry," it is possible for a single factor to have such force that it disposes of the whole takings claim. *Ruckelshaus v. Monsanto Co.* 467 U.S. 986, 1005 (1984) (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 175 (1979)); *see also Norman v. United States*, 429 F.3d 1081, 1094 (Fed. Cir. 2005) (noting that the absence of a single *Penn Central* factor can be dispositive); *Good*, 189 F.3d at 1360 (affirm-

ing a grant of summary judgment for the government solely on the lack of reasonable investment-backed expectations); *Golden Pac. Bankcorp v. United States*, 15 F.3d 1066, 1074 (Fed. Cir. 1994) (concluding the absence of reasonable investment-backed expectations disposed of the takings claim).

Turning to the reasonable investment-backed expectations prong of the *Penn Central* analysis, the first task is determining the relevant date for assessing Mr. Mehaffy's expectations. Mr. Mehaffy asserts the relevant date is prior to the passage of the CWA. He notes that he was the Secretary-Treasurer of Nomikano during the negotiation of the easement with the Corps, that he was involved in the negotiations of the easement, and that he signed the easement deed in his capacity as an officer of Nomikano. He concludes these facts show he had an expectation for future development of the property before enactment of the CWA.

However, reasonable investment-backed expectations are measured at the time the claimant acquires the property. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 633 (2001) (O'Connor, J., concurring); *Appolo Fuels,Inc. v. United States*, 381 F.3d 1338, 1348–49 (Fed. Cir. 2004); *Good*, 189 F.3d at 1361–62. Mr. Mehaffy was not the owner of the property at the time the easement was negotiated. Nor was he the owner of the property before the CWA was passed. Rather, he purchased the property twenty-eight years after the passage of the CWA and thirteen years after the property had been sold to MCC in an intervening arms-length transaction. Thus, Mr. Mehaffy's reasonable investment-backed expectations must be considered in light of the regulatory climate that existed when he purchased the property. *Appolo Fuels, Inc.*, 381 F.3d at 1349; *Good*, 189 F.3d at 1361.

In legal terms, the property owner who buys land with knowledge of a regulatory restraint "could be said to have no reliance interest, or to have assumed the risk of any economic loss." *Loveladies Harbor, Inc. v. United States*, 28 F.3d 1171, 1179 (Fed. Cir. 1994). Here, section 404 permitting requirements were in place and well known at the time Mr. Mehaffy purchased the land. Mr. Mehaffy admits that due to his work in the construction field, he was aware of the need to obtain a section 404 permit when filling wetlands. App. 103. Additionally, Mr. Mehaffy knew as early as 1980 the Corps intended to apply this requirement to the property. Before he purchased the property, Mr. Mehaffy had both constructive and actual knowledge that federal regulations could ultimately prevent him from exercising the right reserved in the easement to fill certain land. Therefore, he did not have a reasonable, investment-backed expectation that he could develop the property without being subject to the permitting requirements of the CWA.

The language of the easement does not change this analysis. When the easement was granted in 1970, it did not give Nomikano any new property rights. Rather, the easement reserved a right which Nomikano shared with all other similarly situated land owners—the ability to fill one's land without asking the government's permission. The CWA altered the expectation of this right for all landowners. When Mr. Mehaffy purchased the land 30 years later, the easement could not give him a new expectation of rights. Mr. Mehaffy is in the same position as other property owners and has no expectation to fill his wetlands without first obtaining a permit under the CWA.

### III.

Because this court finds the reasonable expectations factor dispositive, it affirms the trial court's grant of

summary judgment and will not further discuss the character of the government action or the economic impact of the regulation.

**AFFIRMED**